M. Sylvain LEDEE, et al., Plaintiffs, Appellants,

v.

CERAMICHE RAGNO, et al., Defendants, Appellees.

No. 82–1057.

United States Court of Appeals, First Circuit.

Argued June 9, 1982.

Decided Aug. 4, 1982.

Rehearing Denied Aug. 30, 1982.

A. Valentin Adames, Rio Piedras, P. R., with whom Law Firm of Benny Frankie Cerezo, Rio Piedras, P. R., was on brief, for plaintiffs, appellants.

Fernando Gonzalez Gierbolini, Rio Piedras, P. R., with whom Goldman, Antonetti & Davila, Santurce, P. R., was on brief, for defendants, appellees.

Before COFFIN, Chief Judge, ROSENN,* Senior Circuit Judge, BOWNES, Circuit Judge.

COFFIN, Chief Judge.

In this appeal from the district court's arbitration order, 528 F.Supp. 243, we must explore the relationship between the Federal Arbitration Act and a statute that prohibits certain disputes from being arbitrated outside the Commonwealth of Puerto Rico.

The defendants-appellees are Italian corporations that make and market ceramic tiles. The plaintiffs-appellants are two Puerto Rico corporations and an individual citizen of the Commonwealth. In 1964 the parties entered into a distributorship agreement giving the appellants exclusive rights to sell and distribute the appellees' ceramic tiles in the Antilles. The agreement was reduced to writing on April 22, 1971, and contained the following paragraph 9:

> "Any dispute related to the interpretation and application of this contract will be submitted to an Arbiter selected by the President of the Tribunal of Modena, [Italy,] who will judge as last resort and without procedural formalities."

In March, 1981, the appellants brought suit in the Superior Court of Puerto Rico, alleging that the appellees had breached the contract by unjustifiably terminating their distributorship. The complaint sought damages in accord with the provisions of the Puerto Rico Dealers Act, Law 75 of June 24, 1964, as amended, 10 L.P.R.A. §§ 278 *et seq.* The appellees removed the case to the United States District Court for

* Of the Third Circuit, sitting by designation.

the District of Puerto Rico. 9 U.S.C. § 205; 28 U.S.C. §§ 1332(a)(2), 1441(a). The district court ordered arbitration in accord with paragraph 9 and dismissed the complaint. This appeal ensued.

Appellants contend first that, under the laws of the Commonwealth of Puerto Rico, paragraph 9 is void and unenforceable. They invoke the general principle that contracting parties may not agree to clauses or conditions "in contravention of law, morals, or public order". 31 L.P.R.A. § 3372. And to show that paragraph 9 is contrary to the public order, they direct our attention to the Dealers Act, as amended. The Dealers Act was enacted to help protect Puerto Rico distributors from the allegedly exploitative practices of certain foreign suppliers.[1] Substantively, it prohibited termination of dealership contracts except "for just cause". 10 L.P.R.A. § 278a. Moreover, it declared that its provisions were of a public order and that the dealers' rights under it could not be waived. 10 L.P.R.A. § 278c. In 1978 it was amended to codify prior judicial constructions, see *Walborg Corp. v. Tribunal Superior*, 104 D.P.R. 184 (1975), so that today it reads:

> "Any stipulation that obligates a dealer to adjust, arbitrate or litigate any controversy that comes up regarding his dealer's contract outside of Puerto Rico, or under foreign law or rule of law, shall be likewise considered as violating the public policy set forth by this chapter and is therefore null and void." 10 L.P.R.A. § 278b–2.

Appellants continue their argument by suggesting that, given the arbitration clause's unenforceability under Puerto Rico Law, the federal district court could not enforce it. They observe that Chapter One of the Federal Arbitration Act is limited, in

that it makes arbitration clauses enforceable "save upon such grounds as exist at law or in equity for the revocation of any contract". 9 U.S.C. § 2. They contend that the Dealers Act provides grounds "at law or in equity" for revocation of paragraph 9.

We need not, however, consider to what extent the phrase "grounds as exist at law or in equity" incorporates Commonwealth law. See *County of Middlesex v. Gevyn Construction Corp.*, 450 F.2d 53 (1st Cir. 1971); Note, *Incorporation of State Law Under the Federal Arbitration Act*, 78 Mich.L.Rev. 1391 (1980). In particular, we need not consider whether the phrase incorporates the Dealers Act. The simple reason is that the district court did not purport to exercise authority under Chapter One of the Federal Arbitration Act; rather, it acted under Chapter Two of the Act, 9 U.S.C. § 201 *et seq.*, which implemented the Convention on the Recognition and Enforcement of Foreign Arbitral Awards, *acceded to by United States*, September 30, 1970, 21 U.S.T. 2517, T.I.A.S.No. 6997 [reprinted following 9 U.S.C.A. § 201 (1982 Supp.)] (hereafter referred to as "the Convention").

█ A court presented with a request to refer a dispute to arbitration pursuant to Chapter Two of the Federal Arbitration Act performs a very limited inquiry. It must resolve four preliminary questions:

(1) Is there an agreement in writing to arbitrate the subject of the dispute? Convention, Articles II(1), II(2).

(2) Does the agreement provide for arbitration in the territory of a signatory of the Convention? Convention, Articles I(1), I(3); 9 U.S.C. § 206; Declaration of the United States upon accession, reprinted in 9 U.S.C.A. at 154 n.29 (1982 Supp.).

---

1. The Act's statement of motives reads, in part:

"The Commonwealth of Puerto Rico cannot remain indifferent to the growing number of cases in which domestic and foreign enterprises, without just cause, eliminate their dealers, concessionaires or agents, as soon as these have created a favorable market and without taking into account their legitimate interests.

The Legislative Assembly of Puerto Rico declares that the reasonable stability in the deal-

er's relationship in Puerto Rico is vital to the general economy of the country, to the public interest and to the general welfare, and in the exercise of its police power, it deems it necessary to regulate, insofar as pertinent the field of said relationship, so as to avoid the abuse caused by certain practices." Laws of Puerto Rico, 1964, p. 231.

(3) Does the agreement arise out of a legal relationship, whether contractual or not, which is considered as commercial? Convention, Article I(3); 9 U.S.C. § 202.

(4) Is a party to the agreement not an American citizen, or does the commercial relationship have some reasonable relation with one or more foreign states? 9 U.S.C. § 202.

If the district court resolves those questions in the affirmative, as it properly did in this case, then it *must* order arbitration unless it finds the agreement "null and void, inoperative or incapable of being performed". Convention, Article II(3).

Appellants argue that the Dealers Act renders paragraph 9 of the contract "null and void, inoperative or incapable of being performed".[2] They contend that the "null and void" clause was intended to incorporate the Dealers Act as an expression of Puerto Rico public policy. We disagree. Such an expansive interpretation of the clause would be antithetical to the goals of the Convention. In *Scherk v. Alberto-Culver Co.*, 417 U.S. 506, 517 n. 10, 94 S.Ct. 2449, 2456 n. 10, 41 L.Ed.2d 270 (1974), the Supreme Court observed:

> "The goal of the Convention, and the principal purpose underlying American adoption and implementation of it, was to encourage the recognition and enforcement of commercial arbitration agreements in international contracts and to unify the standards by which agreements to arbitrate are observed and arbitral awards are enforced in the signatory countries."

The parochial interests of the Commonwealth, or of any state, cannot be the measure of how the "null and void" clause is interpreted. Indeed, by acceding to and implementing the treaty, the federal government has insisted that not even the parochial interests of the nation may be the measure of interpretation. Rather, the clause must be interpreted to encompass only those situations—such as fraud, mistake, duress, and waiver—that can be applied neutrally on an international scale. *I. T. A. D. Associates, Inc. v. Podar Brothers*, 636 F.2d 75 (4th Cir. 1981).[3]

Nothing in the record suggests that the arbitration agreement was "null and void, inoperative or incapable of being performed" within the terms of Article II(3) of the Convention.

*The judgment of the district court is affirmed.*

---

2. Our textual discussion assumes, without deciding, that the Commonwealth would apply the current interpretation of the Dealers Act to this dispute, even though the contract was reduced to writing before the decision in *Walborg, supra*, and before the 1978 amendments to the Dealers Act.

3. Our conclusion accords with the general mode by which appellate courts have construed the Convention and Chapter Two of the Federal Arbitration Act. *See Parsons & Whittemore Overseas Co., Inc. v. Societe Generale de l'Industrie du Papier (RAKTA)*, 508 F.2d 969, 973–74 (2d Cir. 1974) (construing narrowly the "public policy" defense to enforcement of awards under Article V(2)(b)); *McCreary Tire & Rubber Co. v. CEAT*, 501 F.2d 1032 (3d Cir. 1974) (observing that there is "nothing discretionary" about Article II(3)). Similar considerations have influenced the construction of other domestic statutes in the context of international arbitration. *See Scherk, supra; Societe Generale de Surveillance, S.A. v. Raytheon European Management and Systems Co.*, 643 F.2d 863, 867 (1st Cir. 1981).