**GATES ENERGY PRODUCTS, INC., Plaintiff,**

v.

**YUASA BATTERY COMPANY, LTD. and Edward J. Morrison, Jr., d/b/a Western Alarm Supply Company, Defendants.**

Civ. A. No. 82–F–2088.

United States District Court, D. Colorado.

Sept. 9, 1983.

John A. Mitchell, Leonard J. Santisi, Curtis, Morris & Safford, New York City, Robert H. Harry, Donald E. Phillipson, Davis, Graham & Stubbs, Denver, Colo., for plaintiff.

John E. Kidd, Rory J. Radding, Pennie & Edmonds, New York City, William E. Murane, Hugh Q. Gottschalk, Holland & Hart, Denver, Colo., for defendants.

## ORDER

SHERMAN G. FINESILVER, Chief Judge.

IN THIS ACTION, the Plaintiff, Gates Energy Products, Inc. (hereinafter "Gates"), seeks declaratory and injunctive relief, compensatory damages, and punitive damages in three allegedly distinct counts in Plaintiff's Amended Complaint. In Count I, Gates seeks declaratory relief, punitive damages and compensatory damages to remedy Defendants' alleged infringement of Gates' United States Letters Patent No. 3,862,861 (hereinafter "the '861 patent"). In Count II, Gates seeks to recover the damages that it allegedly incurred as a result of Defendant Yuasa Battery Company's (hereinafter "Yuasa") alleged breach of an agreement with Plaintiff regarding the non-disclosure of trade secret technical know-how. In Count III, Gates requests that this Court enter a judgment declaring that Yuasa's United States Letters Patent No. 4,216,280 (hereinafter "the '280 patent") is invalid.

The matters now before the Court include: Defendant Yuasa's motion to refer the parties to arbitration and to dismiss Count II of Plaintiff's Amended Complaint for lack of subject matter jurisdiction under Rule 12(b)(1) F.R.Civ.P.; Defendant Yuasa's motion to dismiss Count III of the Amended Complaint for lack of subject matter jurisdiction under Rule 12(b)(1) F.R. Civ.P.; Defendant Yuasa's motion to stay the need to answer, or, in the alternative, to enlarge its time to answer Count I under Rule 6(b) F.R.Civ.P.; Defendant Yuasa's motion to strike all references to Count II under Rule 12(f) F.R.Civ.P. or, in the alternative, for a more definite statement of Count II under Rule 12(e) F.R.Civ.P.; and Plaintiff's motion under Rule 26(c) F.R. Civ.P. for a protective order quashing defendant Yuasa's notice of deposition pending disposition of Yuasa's motion to stay its Answer to Count I of the Amended Complaint.

These motions have been thoroughly briefed by the parties. Upon careful consideration of the briefs, affidavits, and other evidence submitted by the parties, the Court finds that Defendant Yuasa's motion to refer the parties to arbitration and to dismiss Count II should be GRANTED; Yuasa's motion to dismiss Count III should also be GRANTED; Yuasa's motion to stay the need to answer or to enlarge the time to answer Count I should be DENIED; Yuasa's motion to strike all references to Count II or for a more definite statement of Count II should also be DENIED; and Plaintiff's motion for a protective order quashing defendant Yuasa's notice of deposition should be DENIED.

### I. *Yuasa's Motion to Dismiss and Refer Count II to Arbitration.*

Yuasa and Gates entered into discussions in 1974 regarding the formation of a joint venture between the two companies under which sealed rechargeable lead-acid batteries would be marketed and/or manufactured. During the course of these discussions, Yuasa representatives were allegedly shown confidential trade secret technical know-how developed by Gates relative to its sealed maintenance-free lead-acid battery development. On October 8, 1975, Yuasa and Gates entered into a letter agreement (hereinafter "the letter agreement") in which Yuasa acknowledged its duty to maintain in confidence the trade secret technical know-how disclosed to it by Gates. On May 8, 1978, Yuasa and Gates entered into a joint venture agreement which, according to Defendants, superseded the 1975 letter agreement. The Joint Venture Agreement specifies that Yuasa does not have the right to use any confidential information disclosed at any time by Gates to Yuasa. In addition, the Joint Venture Agreement provides for arbitration of any disputes which arise in connection with the Joint Venture Agreement.

In Count II of the Amended Complaint, Gates alleges that Yuasa disclosed confidential information which was provided to Yuasa by Gates, prior to the formation of their joint venture, in violation of the 1975 letter agreement. Yuasa contends that the issues disputed in Count II should be sub-

ject to arbitration under the Joint Venture Agreement.

■ The United States Supreme Court has recognized that there is a strong policy in favor of Court recognition and enforcement of international arbitration agreements. *Scherk v. Alberto-Culver Co.*, 417 U.S. 506, 520 n. 15, 94 S.Ct. 2449, 2457 n. 15, 41 L.Ed.2d 270 (1974). In addition, if a Court is in doubt regarding whether a dispute requires arbitration, it has been held that the Court should resolve that doubt in favor of arbitration unless the Court can state with "positive assurance" that the dispute was not meant to be arbitrated. *Seaboard Coastline Railroad Co. v. National Rail Passenger Corporation*, 554 F.2d 657, 660 (5th Cir.1977). *See also, In Re Oil Spill by the "Amoco Cadiz" off the Coast of France*, 659 F.2d 789, 795 (7th Cir.1981).

■ A Court presented with a request to refer a dispute to arbitration pursuant to Chapter Two of the Federal Arbitration Act[1] performs a very limited inquiry. It must resolve four preliminary questions: (1) Is there an agreement in writing to arbitrate the subject of the dispute; (2) Does the agreement provide for arbitration in the territory of a signatory of the Convention; (3) Does the agreement arise out of a legal relationship, whether contractual or not, which is considered as commercial; and (4) Is a party to the agreement not an American citizen, or does the commercial relationship have some reasonable relation with one of more foreign states. *Ledee v. Ceramiche Ragno*, 684 F.2d 184, 186–87 (1st Cir.1982). If the Court resolves these questions in the affirmative, then it must order arbitration unless it finds the agreement "null and void, inoperative or incapable of being performed." *Ledee, supra* at 187. Furthermore, it should be noted that the "null and void" exception is subject to a narrow interpretation:

> Indeed, by acceding to and implementing the treaty, the federal government has insisted that not even the parochial inter-

ests of the nation may be the measure of interpretation. Rather, the clause must be interpreted to encompass only those situations—such as fraud, mistake, duress, and waiver—that can be applied neutrally on an international scale. *I.T. A.D. Associates, Inc. v. Podar Brothers*, 636 F.2d 75 (4th Cir.1981).

*Ledee, supra* at 187.

In the instant case, it is clear that at least three of the four "preliminary questions" discussed in *Ledee* must be answered in the affirmative. The Joint Venture Agreement entered into by Gates and Yuasa provides for arbitration in Japan of all disputes which arise in connection with the Agreement, and Japan is a signatory of the Convention. In addition, the arbitration clause of the Joint Venture Agreement arises out of a legal relationship which must be considered as commercial, and a party to the Agreement, Yuasa, is not an American citizen. The only dispute in the instant case regarding Yuasa's motion to dismiss Count II and refer it to arbitration is whether the arbitration clause of the Joint Venture Agreement is a viable agreement in writing to arbitrate the issues that are alleged in Count II.

Therefore, if this Court determines that the Joint Venture Agreement is a viable agreement in writing between the parties to arbitrate the issues raised in Count II of the Plaintiff's Amended Complaint, then this Court must dismiss Count II and refer it to arbitration in Japan.

### A. *The Scope of the Arbitration Clause.*

■ Paragraph 16.9 of the Joint Venture Agreement states, in pertinent part, that "YUASA shall not have any right at any time to use for its own benefit any confidential information disclosed at any time by GATES to the Company and/or YUASA..." Paragraph 16.13 of the Joint Venture Agreement provides for arbitration of all disputes which may arise in relation to the Joint Venture Agreement:

---

1. 9 U.S.C. § 201 et seq. (1970).

All disputes, controversies, or differences which may arise between the parties hereof, out of or in relation to or in connection with this agreement, or the breach thereof, shall be finally settled by arbitration pursuant to Japan-American Trade Arbitration Agreement of September 16, 1952, by which each party hereto is bound. Such arbitration shall be held in Japan and conducted in the English language.

Therefore, on its face, the Joint Venture Agreement provides for arbitration of any disputes which arise regarding Yuasa's use of confidential information disclosed to it by Gates.

Plaintiff has presented several arguments in support of its contention that the arbitration agreement does not encompass the issues disputed in Count II of the Amended Complaint. Initially, Plaintiff argues that Paragraph 16.9 of the Joint Venture Agreement was intended to apply only to information that was disclosed by Gates after the parties entered into the Joint Venture Agreement. However, where the terms of a contract are clear, the intent of the parties must be ascertained from the contract itself. *Harrison Western Corp. v. Gulf Oil Co.*, 662 F.2d 690, 695 (10th Cir.1981); *Metropolitan Paving Co. v. City of Aurora, Colorado*, 449 F.2d 177 (10th Cir.1971). In the instant case, the pertinent language of Paragraph 16.9 is clear: "YUASA shall not have any right ... to use ... any confidential information disclosed *at any time* by GATES ... to YUASA." [Emphasis Supplied] In our view, the clear import of this language is to prohibit Yuasa from using confidential information obtained even before the parties entered into the Joint Venture Agreement.

This conclusion is supported by the fact that the Joint Venture Agreement superseded the agreement which controlled the use of information which was disclosed by Gates to Yuasa prior to the formation of the Joint Venture Agreement. As noted above, Yuasa acknowledged its duty to maintain in confidence the trade secret technical know-how disclosed to it by Gates

in a letter agreement entered into by the parties in 1975. Further, the first sentence of that letter agreement indicates that the agreement was related to the formation of the joint venture between Gates and Yuasa:

Gates Energy Products, Inc. (GEP) and Yuasa Battery Company, Ltd. (YUASA) have expressed interest in evaluating the possibility of forming a joint venture or other cooperative program under which sealed rechargeable lead-acid batteries would be marketed and/or manufactured.

Paragraph 16.1 of the Joint Venture Agreement, in pertinent part, states that the Joint Venture Agreement supersedes prior agreements entered into by the parties with respect to the matters referred to in the Joint Venture Agreement:

This Agreement and the attachments listed below set forth the entire understanding between the parties and supersedes all agreements previously entered into by them with respect to the matters referred to herein.

Therefore, the Court finds that the Joint Venture Agreement superseded the October 8, 1975 letter agreement, and the Joint Venture Agreement constitutes the only agreement between the parties regarding the use of information disclosed by Gates to Yuasa. Accordingly, the Court finds that any dispute regarding disclosed information is subject to arbitration regardless of when the information was disclosed.

■ Plaintiff also argues that Paragraph 16.13 of the Joint Venture Agreement (hereinafter "the arbitration clause") does not encompass the issues involved in Count II of the. Amended Complaint because Count II does not allege that Yuasa used confidential information for its own benefit. As noted above, Paragraph 16.9 of the Joint Venture Agreement states in pertinent part that "Yuasa shall not have any right ... to use for its own benefit any confidential information disclosed at any time by Gates." Plaintiff contends that it never alleged in Count II that Yuasa used the information for its own benefit; rather,

Plaintiff claims it only alleged that it was injured by Yuasa's disclosure of the information in its patent application in Japan. The Court can not accept this argument. The Court finds that Yuasa applied for the patent in Japan for its own benefit; therefore, Paragraph 16.9 applies to such a use of confidential information, and any dispute regarding that use is subject to arbitration under the Joint Venture Agreement.

Therefore, this Court finds that the issues involved in Count II of Plaintiff's Amended Complaint are within the scope of the arbitration clause of the Joint Venture Agreement.

### B. *The Viability of the Joint Venture Agreement.*

■ Plaintiff has argued that Count II of the Amended Complaint is not subject to arbitration under paragraph 16.13 of the Joint Venture Agreement because the Joint Venture Agreement was terminated on April 10, 1981. However, Plaintiff's claim is based on events which occurred prior to the termination of the Joint Venture Agreement; therefore, disputes regarding those events should still be subject to arbitration. *See, Becker Autoradio v. Becker Autoradiowerk GmbH* 585 F.2d 39 (3rd Cir.1978); *Zenol, Inc. v. Carblox, Ltd.,* 334 F.Supp. 866, 868–69 (W.D.Pa.1971), *aff'd,* 474 F.2d 1338 (3rd Cir.1973).

■ Plaintiff, citing the Uniform Commercial Code, 1973 C.R.S. § 4–2–106(3), also contends that any obligation to arbitrate was an executory obligation which was discharged upon the termination of the Joint Venture Agreement. However, the Federal Arbitration Act established that an arbitration clause in a contract creates substantive rights and that such a clause is not purely remedial. *Standard Magnesium Corporation v. Fuchs,* 251 F.2d 455, 458 (10th Cir.1957). Therefore, if one assumes that the Uniform Commercial Code is applicable in this situation, Yuasa's right to arbitrate would survive termination of the Joint Venture Agreement because § 4–2–106(3) provides that "any right based on prior breach or performance survives."

■ Therefore, this Court finds that the arbitration clause of the Joint Venture Agreement is a viable written agreement between the parties to arbitrate the issues contained in Count II of the Plaintiff's Amended Complaint. Accordingly, Count II of the Amended Complaint is hereby dismissed, and referred to arbitration pursuant to the arbitration clause of the Joint Venture Agreement.

### II. *Yuasa's Motion to Dismiss Count III.*

■ A plaintiff has the obligation to allege in his complaint the facts essential to show that the Court has subject matter jurisdiction over the matter in dispute. If Plaintiff's allegations of jurisdictional facts are challenged by his adversary in any appropriate manner, he must support them by competent proof. *McNutt v. General Motors Corp.,* 298 U.S. 178, 189, 56 S.Ct. 780, 785 (1936); *Land v. Dollar,* 330 U.S. 731, 735, 67 S.Ct. 1009, 91 L.Ed. 1209 (1947).

■ The Declaratory Judgment Act, 28 U.S.C. § 2201, provides that federal courts may issue declaratory judgments only in cases of actual controversy. This requirement is "a jurisdictional prerequisite of constitutional dimension." *International Harvester Co. v. Deere & Company,* 623 F.2d 1207, 1210 (7th Cir.1980); *Grafon Corp. v. Hausermann,* 602 F.2d 781, 783 (7th Cir.1979); *Aetna Life Ins. Co. v. Haworth,* 300 U.S. 227, 239–41, 57 S.Ct. 461, 463–64, 81 L.Ed. 617 (1937).

■ An actual controversy exists in the context of an action seeking a declaratory judgment of patent invalidity only if the plaintiff discloses conduct on the part of the defendant that makes reasonable the plaintiff's apprehension that it will face an infringement suit or the threat of one if it commences or continues the activity in question. *International Harvester Co., supra,* 1211. *See, Grafon Corp., supra,* 783; *Super Products Corp. v. D.P. Way Corp.* 546 F.2d 748, 753 (7th Cir.1976).

In the instant case, affidavits submitted by Yuasa support Yuasa's contention that

it did not engage in conduct that would result in any reasonable apprehension by the Plaintiff that Plaintiff will face an infringement suit or the threat of one if it continues to produce and sell its batteries. The affidavits submitted by Yuasa state that Yuasa has never threatened Gates or any of its customers or anyone else with infringement of the '280 patent by Gates' use of separator material in batteries it manufactures and sells. In addition, the affidavits state that Yuasa has never asserted the '280 patent against Gates, its customers, or anyone else, nor has Yuasa requested or required Gates or any of its customers or anyone else to obtain a license under the '280 patent to manufacture, sell or use Gates' batteries which incorporate the separator material. Furthermore, the affidavits indicate that Gates has never asked for any royalties or any payment as tribute to the '280 patent from Gates, its customers or anyone else, and Gates has never advised or complained to Yuasa that Gates' ability to sell its batteries has been adversely affected by the issuance of the '280 patent or that issuance of the patent has caused Gates to modify its manufacture, sale or use of its batteries so as to impair its ability to make any future sales. These portions of the affidavits submitted by Yuasa have not been disputed by Gates.

▮ Gates has made several arguments in support of its contention that an actual controversy exists in the instant case. Initially, Gates argues that it need not make a substantial showing of real and reasonable apprehension of action by Yuasa because it is engaged in the manufacture and sale of batteries which may infringe the patent owned by Yuasa. Although it may be true that there is less of a possibility that the Court will be asked to render an advisory opinion when the Plaintiff is an actual manufacturer ·of a product that may infringe the patent owned by another, the Plaintiff must still demonstrate that conduct of the Defendant is the cause of some reasonable apprehension in order for the Court to have subject matter jurisdiction. *See International Harvester Co., supra.*

▮ Gates also argues that a controversy exists in this case because Yuasa defended opposition proceedings brought by Gates against Yuasa's patent applications in Japan and West Germany. Although there is some dispute regarding whether those patent applications involved the counterparts to the '280 patent, the Court finds that defending against such opposition does not constitute sufficient controversy to form the basis of subject matter jurisdiction in the instant case. It has been held that even where a plaintiff had initiated oppositions in foreign countries and had been sued for infringement of a defendant's foreign counterpart patent, there was no actual controversy sufficient to form the basis of subject matter jurisdiction. *Dr. Beck & Co. GmbH v. General Electric Company*, 210 F.Supp. 86, 92 (S.D.N.Y. 1962), *aff'd*, 317 F.2d 538 (2nd Cir.1963). In addition, by analogy, this Court has held that opposition to the issuance of a trademark does not give rise to an actual controversy. *Wuv's International v. Love's Enterprises, Inc.*, 200 U.S.P.Q. 273, 275 (D.Colo.1978), *aff'd*, No. 80–2309 (10th Cir. Mar. 21, 1983). Therefore, Yuasa's defense of an opposition proceeding brought by Gates does not constitute conduct that makes reasonable the Plaintiff's apprehension that it will face an infringement suit or the threat of one if it continues its activity.

▮ Plaintiff, citing *Cummings v. Moore*, 202 F.2d 145 (10th Cir.1953) and *Honeywell Inc. v. Sperry Rand Corp.*, 180 U.S.P.Q. 673 (D.Minn.1973), also argues that a controversy exists in this case because of Plaintiff's allegations regarding the derivation of Yuasa's '280 patent. However, both of those cases involved situations in which the Defendant had engaged in some form of overt conduct which resulted in Plaintiff's reasonable apprehension. In *Cummings, supra,* the Patentee contacted Plaintiff's customers and told them that Plaintiff was infringing its patent. In *Honeywell, supra,* the Patentee had brought an infringement suit against the

Plaintiff in a different U.S. District Court. Therefore, this Court finds that in the absence of some form of overt conduct on the part of the Defendant allegations regarding the derivation of a Defendant's patent is insufficient to form the basis of an actual controversy necessary to give the Court jurisdiction under the Declaratory Judgment Act.

■ Gates also contends that a justiciable controversy exists in this case because of its potential liability resulting from its obligation to indemnify its customers against patent infringement under the U.C.C., 1973 C.R.S. § 4–2–312(3). However, to affect Gates' warranty obligations, a customer must first notify and alert Gates that a claim of infringement of the '280 patent has been made against the customer. U.C.C. 1973 C.R.S. § 4–2–607(3)(b). As noted above, it is undisputed that Yuasa has never contacted any of Gates' customers regarding an infringement of the '280 patent. In the absence of such a contact, or some other form of conduct on the part of Yuasa, no actionable controversy exists such as is necessary for this Court to have jurisdiction under the Declaratory Judgment Act.

Given our decision to dismiss Count III of Plaintiff's Complaint for lack of subject matter jurisdiction under Rule 12(b)(1) of the Federal Rules of Civil Procedure, it is not necessary to consider whether Count III should be dismissed for failure to state a claim under Rule 12(b)(6). The Court's decision should not be interpreted as a decision on the merits of plaintiff's claim; rather, this Court is forced to dismiss Count III because there is not a justiciable controversy regarding Count III at this time.

III. *Other Motions.*

■ Yuasa's motion to strike all references to Count II under Rule 12(f) F.R. Civ.P. is hereby DENIED. References in Gates' Amended Complaint regarding disclosures by Gates to Yuasa of confidential matters, and references in the allegations to events leading up to and during the Joint Venture, may prove to be relevant to Plaintiff's claim of patent infringement under Count I of the Amended Complaint. Therefore, Yuasa's motion to strike is premature at this time, and the motion is hereby DENIED without prejudice.

Plaintiff's motion under Rule 26(c) for a protective order quashing Defendant's notice of deposition pending disposition of Defendant's motion to stay its answer to Count I, to the extent it is still viable, is hereby DENIED.

Defendant's motion to enlarge the time to answer Count I of Plaintiff's Amended Complaint is hereby DENIED, and Defendant is directed to file its Answer to Count I of the Amended Complaint by the close of business on September 19, 1983.

## ORDER

For the reasons stated above, Defendant Yuasa's motion to refer the parties to arbitration and to dismiss Count II of Plaintiff's Amended Complaint for lack of subject matter jurisdiction under Rule 12(b)(1) is hereby GRANTED.

Defendant Yuasa's motion to dismiss Count III of Plaintiff's Amended Complaint for lack of subject matter jurisdiction under Rule 12(b)(1) F.R.Civ.P. is also GRANTED.

Defendant Yuasa's motions to enlarge its time to answer Count I under Rule 6(b) F.R.Civ.P. and to strike all references to Count II under Rule 12(f) F.R.Civ.P. are hereby DENIED.

Plaintiff's motion under Rule 26(c) for a protective order quashing Defendant's notice of deposition pending disposition of Defendant's motion to stay its answer to Count I, to the extent it is still viable, is hereby DENIED.