USCA1 Opinion

 

 United States Court of Appeals
 For the First Circuit

No. 99-1470

 FRANCESCO DIMERCURIO,

 Plaintiff, Appellant,

 v.

 SPHERE DRAKE, INSURANCE PLC. NO 1 A/C,

 Defendant, Appellee.

 APPEAL FROM THE UNITED STATES DISTRICT COURT

 FOR THE DISTRICT OF MASSACHUSETTS

 [Hon. Joseph L. Tauro, U.S. District Judge]

 Before

 Selya, Circuit Judge,
 Coffin, Senior Circuit Judge,
 and Boudin, Circuit Judge.
 
 
 
 
 Joseph M. Orlando with whom Vita A. Palazzolo was on brief for
appellant.
 Richard H. Pettingell for appellee.

January 31, 2000

 
 

 COFFIN, Senior Circuit Judge. This case requires us to
evaluate the validity of an arbitration provision contained in an
insurance policy issued by London-based appellee Sphere Drake
Insurance PLC for coverage on a Massachusetts fishing boat. 
Appellant Francesco DiMercurio, a fisherman who was injured when
the boat sank, claims that the arbitration clause is unenforceable
for various reasons, among them that Massachusetts law voids
provisions in insurance policies that deprive the commonwealth's
courts of jurisdiction over the insurer. See Mass. Gen. Laws ch.
175, 3, 22. The district court upheld the validity of the
arbitration clause, and we affirm.
 I. Factual Background
 The parties' dispute originated with the sinking in July 1994
of the F/V CAPE COD, a commercial shipping vessel owned by a
Gloucester, Massachusetts company, Rosalie & Matteo Corporation. 
Appellant DiMercurio, a fisherman, suffered injuries in the
incident and filed a claim for damages against Rosalie & Matteo. 
Rosalie & Matteo's insurer, Sphere Drake, denied the claim and
voided the policy on the ground that the insured had never obtained
a condition survey that was a prerequisite for coverage.
 DiMercurio subsequently filed a personal injury suit against
Rosalie & Matteo, but the company, whose only asset had been the
F/V CAPE COD, defaulted. In March 1997, the district court awarded
DiMercurio $350,000. A month later, Rosalie & Matteo assigned to
DiMercurio all rights it had against Sphere Drake under the
insurance policy.
 DiMercurio then took his claim directly to Sphere Drake,
demanding that the insurer pay the $350,000 judgment. Sphere Drake
denied the demand and sought to invoke the arbitration process
specified in the policy, which called for arbitration of all
coverage disputes in London. DiMercurio responded by filing this
action, in which he challenges the validity of the arbitration
provision and seeks recovery of his damages award.
 The district court granted summary judgment for Sphere Drake,
concluding that the arbitration clause was enforceable and that the
parties' dispute over coverage must be resolved pursuant to its
procedures. This appeal followed.
 II. Discussion
 DiMercurio's primary argument on appeal is that the
arbitration provision is unenforceable because it effectively
deprives the Massachusetts courts of jurisdiction in contravention
of Massachusetts General Laws chapter 175, 22, which voids "any
condition, stipulation or agreement [in an insurance policy]
depriving the courts of the commonwealth of jurisdiction of actions
against [the insurer]." He alternatively asserts that the
provision is invalid on grounds of unconscionability, primarily due
to lack of mutuality of obligation. We explain below why we find
neither of these contentions to have merit.
 A. Standard of Review
 We review the district court's grant of summary judgment de
novo. See Bridges v. MacLean Stevens Studios, Inc., No. 99-1126,
slip op. at 4 (lst Cir. Jan. 6, 2000). At issue is the validity of
a contract provision the arbitration clause and our task is to
ascertain the intentions of the parties, consistent with state law
principles and with due regard for the federal policy favoring
arbitration. See Brennan v. King, 139 F.3d 258, 264 (lst Cir.
1998). The parties identify no significant factual dispute,
disagreeing instead over the legal significance of the undisputed
record. We therefore proceed to address those questions of law.
 B. Enforceability of an International Arbitration Clause
 An arbitration provision in an international commercial
agreement such as the London-issued insurance policy in this case
is governed by Chapter Two of the Federal Arbitration Act ("FAA"),
9 U.S.C. 201-208, which implemented the United Nations
Convention on the Recognition and Enforcement of Foreign Arbitral
Awards ("the Convention"), ratified by the United States, September
30, 1970, 21 U.S.T. 2517, T.I.A.S. No. 6997 (reprinted following 9
U.S.C. 201). A court in the United States faced with a request to
refer a dispute governed by Chapter Two to arbitration performs a
"very limited inquiry" into whether an arbitration agreement exists
and falls within the Convention's coverage. See Ledee v. Ceramiche
Ragno, 684 F.2d 184, 186 (lst Cir. 1984). An agreement that
satisfies the prerequisites, as does the provision in the Sphere
Drake policy, is enforceable under the Convention unless it is
"null and void, inoperative or incapable of being performed." Art.
II, Sec. 3. It is at that second stage of inquiry that DiMercurio
contends the Sphere Drake provision fails.
 C. Arbitration and Jurisdiction 
 DiMercurio argues that the arbitration provision in the Sphere
Drake policy is "null and void" under section 22 of the
Massachusetts General Laws, which bars any condition in an
insurance policy that deprives Massachusetts courts of
jurisdiction. The arbitration provision does just that, he
maintains, by requiring that his dispute be taken out of the
commonwealth's courts. He further argues that the general federal
policy in favor of arbitration, as expressed through the FAA, does
not trump section 22 because the McCarran-Ferguson Act, 15 U.S.C.
 1012(b), explicitly protects state laws regulating "the business
of insurance" from preemption by federal legislation. See Allied-
Bruce Terminix Cos., Inc. v. Dobson, 513 U.S. 265, 272 (1995)
("state courts cannot apply state statutes that invalidate
arbitration agreements") (citing Southland Corp. v. Keating, 465
U.S. 1, 15-16 (1984)).
 Whatever the reach of the McCarran-Ferguson Act, it is
relevant here only if state law voids the Sphere Drake arbitration
provision as an "agreement depriving the courts of the commonwealth
of jurisdiction." The district court ruled that this was not such
an agreement, rejecting the view that arbitration ousts a court of
jurisdiction. The court relied in large part on our own case law
stating precisely that conclusion. See Vimar Seguros Y Reaseguros,
S.A. v. M/V SKY REEFER, 29 F.3d 727, 733 (lst Cir. 1994)("[A]n
agreement to arbitrate does not deprive a federal court of its
jurisdiction over the underlying dispute."), aff'd, 515 U.S. 528
(1995); Morales Rivera v. Sea Land of Puerto Rico, Inc., 418 F.2d
725, 726 (lst Cir. 1969) (holding that arbitration clauses are "not
destructive of jurisdiction"); see also Vimar Seguros, 515 U.S. at
542 (O'Connor, J., concurring) ("Foreign arbitration clauses of the
kind presented here do not divest domestic courts of jurisdiction,
unlike true foreign forum selection clauses . . . ."). 
 DiMercurio challenges this precedent. He claims that language
in the FAA and in other case law indicates that, but for the FAA,
courts are ousted of jurisdiction by arbitration provisions. 
Although he acknowledges that the FAA was intended to confirm a
court's jurisdiction while permitting enforcement of arbitration
agreements, he maintains that any jurisdiction-reviving impact of
the FAA is negated in this instance by the combined force of
section 22 of the Massachusetts General Laws' chapter 175 and the
McCarran-Ferguson Act. In other words, section 22 invalidates
arbitration agreements because they divest a court of jurisdiction,
and the McCarran-Ferguson Act prevents the FAA, and its policy
favoring arbitration, from preempting section 22. He contends that
our prior decisions holding that arbitration does not negate
jurisdiction fail to take into account this relationship among the
federal and state statutes, and thus are not dispositive. In
addition, he invokes as further support for his position decisions
holding that a case referred to arbitration under the Convention
should be dismissed for lack of subject-matter jurisdiction.
 DiMercurio's thesis unquestionably has historical support. 
The prevailing attitude of the courts toward arbitration before
passage of the FAA was one of disapproval, and this typically was
couched as an objection to being ousted of their jurisdiction. See
Dean Witter Reynolds Inc. v. Byrd, 470 U.S. 213, 220 n.6 (1985)
(explaining history of court refusal to enforce arbitration
agreements on the ground that they ousted courts of jurisdiction);
see also Allied-Bruce Terminix Cos., 513 U.S. at 270-71 (similar). 
Section 4 of the FAA appears to adopt the ouster concept by
referring to the jurisdiction courts would have "save for" an
arbitration agreement. Similarly, in American Sugar Refining Co.
v. The Anaconda, 138 F.2d 765 (5th Cir. 1943), aff'd, 322 U.S. 42
(1944), the Fifth Circuit states that, prior to enactment of the
FAA, an agreement to arbitrate would not be enforced in United
States courts because "parties may not by private agreement oust
the jurisdiction of the courts." Id. at 766. The court then
continued:
 The act was passed not to oust the jurisdiction of the
 courts but to provide for maintaining their jurisdiction
 while at the same time recognizing arbitration agreements
 as affirmative defenses and providing a forum for their 
 specific enforcement.

Id. at 766-67. See also, e.g., Kurt Orban Co. v. S/S CLYMENIA, 318
F. Supp. 1387, 1390 (S.D.N.Y. 1970) (quoting above language from
The Anaconda).
 DiMercurio asserts that such language demonstrates that the
FAA was necessary to give back to courts jurisdiction that
otherwise is usurped by an arbitration provision. Thus, if the FAA
is rendered inapplicable here by the McCarran-Ferguson Act,
DiMercurio maintains that the Massachusetts courts remain "ousted
of jurisdiction" by the Sphere Drake arbitration provision, in
violation of section 22.
 Our problem with this argument is that the prevailing attitude
has changed. While some of the authority on which DiMercurio
relies may reflect his view that arbitration without the
restorative effect of the FAA unlawfully ousts a court of
jurisdiction, that view has lost much, if not all, of the
legitimacy it once may have had. See Mitsubishi Motors Corp. v.
Soler Chrysler-Plymouth, Inc., 473 U.S. 614, 626-27 (1985) ("[W]e
are well past the time when judicial suspicion of the desirability
of arbitration and of the competence of arbitral tribunals
inhibited the development of arbitration as an alternative means of
dispute resolution."). Agreements to arbitrate are now typically
viewed as contractual arrangements for resolving disputes rather
than as an appropriation of a court's jurisdiction. See, e.g.,
Mastrobuono v. Shearson Lehman Hutton, Inc., 514 U.S. 52, 57 (1995)
(FAA aims "`to ensure the enforceability, according to their terms,
of private agreements to arbitrate'") (quoting Volt Information
Sciences, Inc. v. Board of Trustees of Leland Stanford Junior
Univ., 489 U.S. 468, 476 (1989)); Dean Witter Reynolds, 470 U.S. at
219-20 (purpose of FAA was "to place an arbitration agreement `upon
the same footing as other contracts, where it belongs'");
Bercovitch v. Baldwin School, Inc., 133 F.3d 141, 147-48 (lst Cir.
1998) (same); Morales Rivera, 418 F.2d at 726 (agreements to
arbitrate are not destructive of jurisdiction, but "[t]hey are,
precisely, agreements, and as such may be pleaded as a personal
defense"); Cranston Teachers Ass'n v. Cranston School Comm., 386
A.2d 176, 178 (R.I. 1978) (arbitration agreement does not implicate
court's "power to adjudicate the dispute" but "raises the distinct
question whether the court should have exercised that power"); cf.
Central Contracting Co. v. Maryland Cas. Co., 367 F.2d 341, 345 (3d
Cir. 1966) (a forum selection clause does not oust the jurisdiction
of the courts; "in effect it merely constitutes a stipulation in
which the parties join in asking the court to give effect to their
agreement by declining to exercise jurisdiction").
 Indeed, despite the language in section 4 of the FAA quoted by
DiMercurio suggesting that an arbitration clause affects
jurisdiction, the House Report accompanying the act indicates that
the drafters understood that the problem was not really
jurisdictional, but rather that the jurisdiction concept was an
illogical remnant of ancient English law. See H.R. Rep. No. 96,
68th Cong., lst Sess., 1-2 (1924). The Supreme Court has
observed that the "preeminent concern of Congress in passing the
Act was to enforce private agreements into which parties had
entered," see Dean Witter Reynolds, 470 U.S. at 219, and the
statutory obligation of courts to do so appears to have opened the
door to erosion of the inherited concern about ouster of
jurisdiction. See generally Bernhardt v. Polygraphic Co. of
America, Inc., 350 U.S. 198, 209-12 (1956) (Frankfurter, J.,
concurring) (discussing possible change in the "traditional
judicial hostility against ousting courts, as the phrase ran, of
their jurisdiction," and noting, "Law does change with times and
circumstances, and not merely through legislative reforms.")
(footnote omitted).
 We think it of some note that section 204 of the FAA's Chapter
Two, which was enacted nearly half a century after the FAA was
first adopted, does not refer to the jurisdiction a court would
have "save for" an arbitration agreement, but instead states that
an action or proceeding "over which the district courts have
jurisdiction" may be brought "in any such court in which save for
the arbitration agreement an action or proceeding with respect to
the controversy between the parties could be brought . . . ." 9
U.S.C. 204 (emphasis added).
 The difference in language reflects the modern view that
arbitration agreements do not divest courts of jurisdiction, though
they prevent courts from resolving the merits of arbitrable
disputes. Further evidence that Congress views the courts as
retaining ultimate authority over a case despite the referral to
arbitration is the provision in Chapter Two of the FAA allowing a
party to seek an order confirming the arbitrator's award. See id.
 207. DiMercurio complains that drawing a line between a court's
jurisdiction over a case and its authority to hear a case creates
a distinction without a difference. We disagree. It is neither
illogical nor meaningless for a court's jurisdiction to remain
intact and crucial to the overall arbitration scheme even while it
honors the parties' voluntary agreement to deal with the merits
outside the courtroom. It is his concept of on-again, off-again,
on-again jurisdiction since a court must have subject-matter
jurisdiction both to refer to arbitration and to confirm an
arbitration award that strikes us as illogical.
 DiMercurio's alternative argument fares no better. To prove
that arbitration agreements governed by the Convention, in
particular, divest courts of jurisdiction, he invokes case law of
fairly recent vintage in which judges ordered dismissals for "lack
of subject matter jurisdiction" when faced with such agreements. 
See, e.g., Siderius, Inc. v. Compania de Acero del Pacifico, S.A.,
453 F. Supp. 22, 25 (S.D.N.Y. 1978); Ledee v. Ceramiche Ragno, 528
F. Supp. 243, 246 (D.P.R. 1981) (citing Siderius), aff'd, 684 F.2d
184 (lst Cir. 1982); see also Tennessee Imports, Inc. v. Filippi,
745 F. Supp. 1314, 1323 (M.D. Tenn. 1990) (noting split in
precedent over whether a court may retain jurisdiction under the
Convention after finding an enforceable agreement to arbitrate;
collecting cases). The rationale for these dismissals is the
finality of the referral to arbitration under the Convention and
Chapter Two of the FAA, neither of which provides explicitly for a
stay of proceedings pending arbitration, as does the FAA's Chapter
One. See Ledee, 528 F. Supp. at 246; Siderius, 453 F. Supp. at
25. Cf. The Anaconda, 322 U.S. at 44 (noting that Chapter One's
stay provision "envisages action in a court on a cause of action
and does not oust the court's jurisdiction of the action, though
the parties have agreed to arbitrate").
 These cases are of limited help to DiMercurio, however, for
two reasons. First, contrary to the notion of a "final" referral,
the parties may as noted above return to court for confirmation
of an arbitration award. Moreover, Chapter Two of the FAA includes
a provision extending Chapter One "to actions and proceedings
brought under this chapter to the extent that that chapter is not
in conflict with this chapter or the Convention." 9 U.S.C. 208. 
Thus, the provision for a stay in section 3 of Chapter One may be
impliedly incorporated into Chapter Two, making international
arbitration agreements no more "final" than domestic ones. See
Tennessee Imports, 745 F. Supp. at 1324.
 The second flaw in DiMercurio's reliance on dismissals for
lack of subject-matter jurisdiction is his failure to take into
account "the chameleon-like quality of the term `jurisdiction'" and
its "wide variety of meanings," Prou v. United States, No. 98-1854,
slip. op. at 13 (lst Cir. Dec. 17, 1999). We recently noted, as an
example, that a reference to "jurisdiction" embraces the very
different concepts of subject-matter jurisdiction and personal
jurisdiction, the former concerning the court's constitutional
power to hear a case and the latter relating to a litigant's waive-
able protection from suit in a particular forum. See id. at 13-14. 
Here, as in Prou, yet another aspect of the word "jurisdiction" is
"of particular pertinence," namely,
 the unfortunate penchant of judges and legislators to use
 the term "jurisdiction" to describe the technically
 distinct notion of a court's authority to issue a
 specific type of remedy in a case in which the threshold
 requirements of subject-matter and personal jurisdiction
 are not open to question.

Id. at 14.

 The semantic imprecision, coupled with the favorable modern
attitude toward arbitration agreements, diminishes the force of
precedent indicating that an agreement to resolve disputes by
arbitration is destructive of subject-matter jurisdiction. Because
the term "subject-matter jurisdiction" is "often misused," Cranston
Teachers Ass'n, 386 A.2d at 178, cases to the effect that a court
lacks authority to act in the face of a valid arbitration agreement
do not necessarily implicate "jurisdiction in the basic sense, but
[may] stand merely for the proposition that if either party
seasonably claims his right to arbitrate, the agreement must be
recognized." Morales Rivera, 418 F.2d at 726; see also, e.g., J.J.
Ryan & Sons v. Rhone Poulenc Textile, S.A., 863 F.2d 315, 322 (4th
Cir. 1988) (remanding with instructions "to decline to exercise
jurisdiction over count one, other than to refer it to arbitration,
and then to dismiss this action" (emphasis added)). We therefore
give little weight to language dismissing arbitrable claims for
lack of "jurisdiction."
 Although our review of authorities strongly indicates that
DiMercurio's "ouster of jurisdiction" concept is for the most part
outmoded as applied to arbitration agreements, we cannot lay this
argument to rest without looking specifically at the Massachusetts
statute he invokes. Given that section 22 of chapter 175 was
enacted in 1856, DiMercurio reasonably can argue that the statute
was intended, and therefore still must be construed, to bar
enforcement of arbitration agreements in insurance policies
governed by Massachusetts law.
 Massachusetts law in this area, however, also has developed
over time. As we shall explain, we are confident that the Sphere
Drake provision is fully enforceable under current Massachusetts
law.

 D. The Impact of the Arbitration Clause under Massachusetts
Law
 Despite the multi-faceted nature of the term "jurisdiction," 
it is more than likely that at the time section 22 was enacted in
1856, and for some time thereafter, the Massachusetts legislature's
concern about insurance policy provisions seeking to divest courts
of jurisdiction extended to arbitration agreements like the one at
issue in this case. The case law shows that Massachusetts'
attitude toward arbitration was within the mainstream for the time. 
In Bauer v. International Waste Co., 201 Mass. 197 (1909), for
example, the Massachusetts Supreme Judicial Court considered an
arbitration clause in a commercial contract and concluded:
 [T]his was an attempt to leave to the arbitrator the
 decision whether there had been any violation of the
 agreement with the stipulation that his decision was to
 be final. This is not an agreement as to some
 preliminary, subsidiary or ancillary matter in aid of an
 action at law or a suit in equity, but an attempt to
 wholly oust the courts of jurisdiction respecting the
 subject matter. It is settled by a long line of
 authorities in this jurisdiction that such an agreement
 cannot be enforced.

Id. at 202-03 (emphasis added); see also Sanford v. Boston Edison
Co., 316 Mass. 631, 636 (1944) (arbitration provisions that
"contemplate the entire and final settlement of all controversies
to which they apply" are unenforceable because such provisions may
not be allowed to oust the court of jurisdiction).
 Just as the FAA changed the landscape with respect to
arbitration under federal law, however, the state's adoption in
1960 of the Uniform Arbitration Act for Commercial Disputes must be
viewed as an official change of outlook. See Mass. Gen. Laws Ann.
ch. 251, 1-19. Section 1 of the Massachusetts arbitration act
provides as follows:
 A written agreement to submit any existing
 controversy to arbitration or a provision in a written
 contract to submit to arbitration any controversy
 thereafter arising between the parties shall be valid,
 enforceable and irrevocable, save upon such grounds as
 exist at law or in equity for the revocation of any
 contract. The provisions of this chapter shall not apply
 to collective bargaining agreements to arbitrate . . . . 
 
Id. 1 (emphasis added).

 This provision is telling in two important respects. First,
it requires that arbitration agreements be enforced except in
circumstances that would invalidate any other contract. This
endorsement of arbitration all but states explicitly that
Massachusetts no longer considers such agreements to oust courts of
jurisdiction. The few grounds listed to invalidate arbitration
clauses are consistent with the Convention's "null and void"
clause, which limits the bases upon which an international
arbitration agreement may be challenged to standard breach-of-
contract defenses:
 The parochial interests of the Commonwealth [of
 Puerto Rico], or of any state, cannot be the measure of
 how the "null and void" clause is interpreted. Indeed, by
 acceding to and implementing the treaty, the federal
 government has insisted that not even the parochial
 interests of the nation may be the measure of
 interpretation. Rather, the clause must be interpreted
 to encompass only those situations such as fraud,
 mistake, duress, and waiver that can be applied
 neutrally on an international scale.

Ledee, 684 F.2d at 187 (rejecting provision in Puerto Rico Dealers
Act that invalidated, on public policy grounds, arbitration clauses
in dealers' contracts, and stating, "[A]n expansive interpretation
of the [null and void] clause would be antithetical to the goals of
the Convention."); see also Mitsubishi Motors, 473 U.S. at 629-31;
Scherk v. Alberto-Culver Co., 417 U.S. 506, 515-19 (1974) ("`We
cannot have trade and commerce in world markets and international
waters exclusively on our terms, governed by our laws, and resolved
in our courts.'" (quoting The Bremen v. Zapata Off-Shore Co., 407
U.S. 1, 9 (1972)).
 Second, section 1 makes an explicit exception for arbitration
provisions in collective bargaining agreements, thereby implicitly
bringing arbitration provisions in insurance policies within its
reach. Whether by restoring jurisdiction to the state courts, akin
to DiMercurio's theory concerning the FAA, or by redefining the
impact of arbitration, the Massachusetts arbitration act apparently
took arbitration agreements outside the scope of section 22's bar
on insurance policy provisions that divest courts of jurisdiction. 
Though we have found no precedent stating so explicitly, that
conclusion is borne out by cases and commentary.
 A widely used summary of Massachusetts law assessed the
current state of the commonwealth's view of arbitration as follows: 

 It was not until 1960 when Massachusetts adopted the
 Uniform Arbitration Act for Commercial Disputes that the
 old "ouster of jurisdiction doctrine," at least as it
 applied to arbitration, was finally put to rest. Section 
 1 of the new Chapter 251 of the General Laws leaves
 little doubt of the Legislature's intent . . . .

 Since the enactment of the Uniform Act, our courts
 have given faithful adherence to its broad purposes and
 today construe arbitration clauses as broadly as the
 parties to the agreement in question intend.
 
19 Massachusetts Practice Evidence 102.6, at 45-46 (2d ed. 1998)
(footnotes omitted). The Massachusetts courts have been equally
clear in affirming the state's support of arbitration provisions,
see O'Brien v. Hanover Ins. Co., 427 Mass. 194, 200, 692 N.E.2d 39,
43 (1998) (citation omitted) (referring to the "strong public
policy favoring arbitration as an expeditious alternative to
litigation for settling commercial disputes"); Home Gas Corp. of
Mass., Inc. v. Walter's of Hadley, Inc., 403 Mass. 772, 774, 532
N.E.2d 681, 683 (1989) (same); Town of Danvers v. Wexler Constr.
Co., 12 Mass. App. Ct. 160, 163, 422 N.E.2d 782, 784 (1981), and
the cases addressing arbitration issues include those involving
such agreements in insurance policies, see, e.g., Spaneas v.
Travelers Indem. Co., 423 Mass. 352, 668 N.E.2d 325 (1996); Miles
v. Aetna Casualty and Surety Co., 412 Mass. 424, 589 N.E.2d 314
(1992); McGovern v. Middlesex Mut. Ins. Co., 359 Mass. 443, 269
N.E.2d 445 (1971). These latter cases provide particularly
persuasive evidence of the enforceability of arbitration provisions
in Massachusetts insurance policies.
 The path of Massachusetts law, together with the analogous
history described in the previous section, leads us to the
conclusion that the Sphere Drake arbitration provision does not
divest the courts of jurisdiction over claims against the company.
Unless the clause is subject to a standard contractual challenge,
it is fully enforceable. We thus turn to DiMercurio's contention
that the clause should be stricken because it is unconscionable.
 E. Unconscionability
 DiMercurio argues that the arbitration provision should not be
enforced against him because the contract does not impose a mutual
obligation to arbitrate on the insurer. Although clause 53 of the
policy requires that all coverage disputes be arbitrated in London,
clause 28.1 permits the company to bring suit in any court of
competent jurisdiction for unpaid premiums "or other sum of
whatsoever nature due from the Assured."
 We adhere to our view that one-sided agreements to arbitrate
are not favored. See McCarthy v. Azure, 22 F.3d 351, 361 (lst Cir.
1994). In this instance, however, both parties are required to
arbitrate coverage disputes. The fact that the company may proceed
in court to recover premiums or like fees a proceeding that is
likely to be much more confined than a coverage dispute does not
render the contract impermissibly unbalanced. See Hannon v.
Original Gunite Aquatech Pools, Inc., 385 Mass. 813, 824, 434
N.E.2d 611, 618 (1982) (inclusion of a clause in a contract
allowing one party, but not the other, to demand arbitration is not
"unconscionable" per se). 
 Moreover, there is no evidence of undue power or deception on
the part of the insurer in the negotiation of the policy. The
particular coverage was selected by Rosalie & Matteo's broker,
Marine Insurance Consultants International Limited, which was
familiar with the Sphere Drake policy forms, including the
arbitration provision. As Rosalie & Matteo's assignee, DiMercurio
is bound by the terms and conditions to which the company agreed.
 We therefore affirm the district court's refusal to invalidate
the arbitration clause on grounds of unconscionability.
 For the foregoing reasons, the judgment of the district court
is affirmed.