607 F.Supp. 1016 (1985)
McDONNELL DOUGLAS CORPORATION, Plaintiff,
v.
The KINGDOM OF DENMARK, et al., Defendants.
No. 84-2336-C(3).
United States District Court, E.D. Missouri, E.D.
April 9, 1985.
*1017 Bryan, Cave, McPheeters & McRoberts, John J. Hennelly, Jr., Kevin F. O'Malley, Curtis M. Dombek, Mark Edelman, St. Louis, Mo., for plaintiff.
G. Keith Phoenix, Shepherd, Sandberg & Phoenix, St. Louis, Mo., Randal R. Craft, Jr., Haight, Gardner, Poor & Havens, New York City, for defendants.

MEMORANDUM
HUNGATE, District Judge.
This matter is before the Court on the motion of defendants, The Kingdom of Denmark, The Royal Danish Navy, and The Royal Danish Naval Material Command, to dismiss the complaint for lack of subject matter jurisdiction, pursuant to 9 U.S.C. § 201, et seq., and in the alternative to stay these proceedings and to compel arbitration, pursuant to 9 U.S.C. §§ 3 and 4.
Plaintiff commenced this action seeking declaratory judgment exonerating it from all liability for damages arising out of the inadvertent launch of a Harpoon missile from a Danish frigate on September 6, 1982.
Plaintiff engages in the manufacture of weapons systems for sale to the United States and foreign governments. Among the weapons systems produced by plaintiff is the Harpoon system, which includes a sixteen-foot-long Harpoon missile and the Harpoon Shipboard CommandLaunch Control Set (launch subsystem) to control the missile. The Harpoon is an anti-ship missile that can be launched from naval surface ships, aircraft, or submarines. The missile skims above the water at low altitude, locates the intended target, flies to it, and, by means of an exploding warhead, destroys or disables the ship.
On or about December 1, 1975, defendants entered into a foreign military sales contract with the government of the United States for the purchase of the Harpoon weapon system. This contract covered the sale of the missiles themselves.
On December 4, 1975, plaintiff, with the permission of the United States Navy, entered into a contract with the defendants for the sale of launch subsystems to be used by the Danish Navy in connection with the operation of the missiles. That contract contained a commercial arbitration clause which provides, in pertinent part, as follows:
13.0 ArbitrationAny dispute or difference arising between the parties, relating to the terms of the present contract and which cannot be settled in a friendly manner, shall be finally settled by an arbitral tribunal.... This contract shall be interpreted in accordance with and be governed by the laws of the State of New York.
A second contract between plaintiff and the Danish Naval Material Command regarding the launch subsystem was entered into on December 7, 1979. The arbitration clause in this agreement is identical to that quoted above, with the exception of the following sentence which was added:
5.0 ARBITRATION.... The tribunal will have full liberty to determine procedure, but the award must be based on the wording of this Contract....
This contract was established for a period of fifteen years and requires plaintiff to provide, inter alia, the following: (1) a data *1018 base for the system and its components; (2) a spare parts stockpile; (3) support services; and (4) direct requisition and repair of parts.
One of the launch subsystems was eventually installed on the Danish frigate Peder Skram in 1979. On September 6, 1982, the defendants were operating the Peder Skram in Danish waters near the island of Kattegat in preparation for upcoming NATO exercises. At approximately noon, Captain Henning G. Olsen, an officer of defendant Royal Danish Navy, attempted to conduct a test of the Harpoon subsystem. During the performance of the test on the launch relay assembly of missile number 3, missile number 4 was inadvertently launched. The missile skimmed along the surface of the water and exploded on Sjaelland, a Danish island, causing great damage to property, and no loss of life or personal injury.
Defendants claim the launch subsystem was supposedly designed to preclude such an accident. It employs several fail-safe systems to prevent unintended and unauthorized launch. The fail-safe devices were all used on that occasion. Defendants claim that, because of plaintiff's faulty design of the system and plaintiff's failure to warn defendants of this potential hazard, a Harpoon missile was inadvertently launched in spite of the fail-safe devices.
Plaintiff argues that the person responsible for the launch was a Danish sailor who violated plaintiff's and defendants' procedures, ignored training he received from plaintiff and Danish personnel, and disregarded warnings from both plaintiff and the United States Navy. As a result, claims the plaintiff, a Harpoon missile was inadvertently launched and eventually exploded on the Danish island.
On August 30, 1984, defendants served upon the plaintiff a demand to arbitrate defendants' claims pursuant to the arbitration clause. These claims are based, inter alia, on breach of contract, breach of express warranty, breach of implied warranties of merchantability and of fitness for intended use in the design, manufacture, testing, maintenance, service, and modification of the Harpoon weapon system, including the instructions, directions, and warnings relating to operating, maintaining, and testing the launch subsystem.
The thrust of the Danish claims is that the mishap occurred due to defects in the Harpoon weapon system and deficiencies in the manuals and instructions provided by plaintiff concerning the operation of the system. Defendants seek recovery for the replacement value of the Harpoon missile and for amounts paid to compensate owners of the property damaged on Sjaelland. The defendants estimate their damages to be approximately three million dollars.
Pursuant to the arbitration provisions of the contracts, each party is to select one member of a three-man panel. Defendants have selected Mr. Alan Philip, an attorney in private practice in Copenhagen, Denmark. Plaintiff has designated Mr. R.E. Keaney, an attorney in private practice in St. Louis, Missouri. Although the third member of the panel has yet to be selected, out of concern to avoid any taint of national bias, these two arbitrators have agreed that the president and third member of the arbitration panel shall not be a national of either the United States or Denmark.
Plaintiff argues that defendants' demand for arbitration represents an ill-considered attempt to convert an arbitration clause intended to provide a method of resolving commercial disputes into a vehicle by which to litigate a tort claim for indemnity and contribution for third-party property damage involving a sensitive U.S. weapons system.
The parties agree that the question whether the proper forum for the resolution of their dispute is controlled by the arbitration clause of their contract, is controlled by federal law. The Convention on the Recognition and Enforcement of Foreign Arbitration Awards (the Convention), 9 U.S.C. § 202, and the United States Arbitration Act (the Act), 9 U.S.C. § 2, set forth the relevant federal statutory law governing the applicability and validity of arbitration clauses in international commercial *1019 contracts. Both the Convention and the Act reflect a policy of the United States favoring the enforcement of agreements to arbitration international commercial disputes. Scherk v. Alberto-Culver Co., 417 U.S. 506, 520 n. 15, 94 S.Ct. 2449, 2457 n. 15, 41 L.Ed.2d 270 (1974); S.A. A. Mineracao da Trindade-Samitri v. Utah Intern., Inc., 745 F.2d 190 (2d Cir.1984); Moses H. Cone Memorial Hosp. v. Mercury Const. Corp., 460 U.S. 1, 103 S.Ct. 927, 74 L.Ed.2d 765 (1983); Southland Corp. v. Keating, 465 U.S. 1, 104 S.Ct. 852, 79 L.Ed.2d 1 (1984). According to the Supreme Court:
A contractual provision specifying in advance the forum in which disputes shall be litigated and the law to be applied is, therefore, an almost indispensable precondition to achievement of the orderliness and predictability essential to any international business transaction. Furthermore, such a provision obviates the danger that a dispute under the agreement might be submitted to a forum hostile to the interests of one of the parties or unfamiliar with the problem area involved.
Scherk, supra, 417 U.S., at 515-16, 94 S.Ct. at 2455-56. The Convention is a commitment by Congress to eliminate the vestiges of judicial reluctance to enforce international arbitration agreements. McCreary Tire & Rubber Co. v. CEAT S.p.A., 501 F.2d 1032 (3d Cir.1974).
When a party seeks to enforce an arbitration provision of a contract, the court shall limit its review to two issues:
(1) whether an express written agreement to arbitrate the subject matter of the present dispute exists between the parties, and (2) if so, whether the agreement to arbitrate has been breached.
Johnson Controls, Inc. v. City of Cedar Rapids, Iowa, 713 F.2d 370, 373 (8th Cir. 1983); see also Contracting Northwest, Inc. v. City of Fredericksburg, Iowa, 713 F.2d 382 (8th Cir.1983). The court shall be guided by the liberal federal policy favoring arbitration and any doubts about the construction of the arbitration provision must be resolved in favor of ordering arbitration. Johnson Controls, supra at 373.
The language of the arbitration clause in this case provides that "[a]ny dispute or difference arising between the parties, relating to the terms of the present contract ..." shall be arbitrated. (emphasis added.) Plaintiff argues the words "relating to" should be construed as narrowing the scope of the arbitration clause and thereby exclude defendants' claims which, according to plaintiff, sound in tort and are not "related to" the contract. This Court finds that the weight of authority supports the defendants' position that "relating to" is generally regarded as broad rather than narrow language. See, e.g., Cone, supra; Southland Corp., supra; Prima Paint Corp. v. Flood & Conklin Manufacturing Co., 388 U.S. 395, 398, 87 S.Ct. 1801, 1803, 18 L.Ed.2d 1270 (1967); Michele Amoruso Figli v. Fisheries Development Corp., 499 F.Supp. 1074 (S.D.N.Y. 1980); Creson v. Quickprint of America, Inc., 558 F.Supp. 984 (W.D.Mo.1983). Accordingly, the Court finds that defendants' claims arising out of an alleged failure of plaintiff's fail-safe system are sufficiently related to the contract governing the supplying, maintaining, and support servicing of that same system so as to be subject to the arbitration clause of the contract.
Plaintiff further argues that the dispute is not subject to arbitration because the Convention and the Act do not apply where a public policy renders the question an inappropriate subject for arbitration or incapable of arbitration. Plaintiff contends that much of the information necessary to its defense of defendants' claims is classified by the U.S. Government and would be available to this Court under certain circumstances, but will not be available to the panel of arbitrators under the same circumstances.
It is true that under some narrow circumstances public policy may be grounds for denying the enforcement of an arbitration agreement. See, e.g., Wilko v. Swan, 346 U.S. 427, 74 S.Ct. 182, 98 L.Ed. 168 (1953). In this case, however, the arbitrators *1020 will not be asked to rule on matters of national security in contravention of a policy of the United States. The more likely result is that availability of plaintiff's evidence may be restricted by national security measures imposed on it by the U.S. Government. It does not appear that plaintiff was unaware of the nature of national security restrictions or the secrecy requirements of the government when it contracted with the defendants. Plaintiff's evidentiary concerns are premature and it would not be appropriate for this Court to speculate as to the various merits of the underlying dispute. Accordingly, the Court will refer the parties to arbitration.
The ordinary practice once the Court has referred the parties to arbitration pursuant to the Act is for the Court to stay proceedings pending the arbitration. 9 U.S.C. § 3. Defendants make a persuasive argument that the precise terms of Article II(3) of the Convention require the action be dismissed for lack of subject matter jurisdiction in the case of international commercial agreements. See McCreary Tire & Rubber Co. v. CEAT S.p.A., supra at 1038; Siderius, Inc. v. Compania de Acero del Pacifico, S.A., 453 F.Supp. 22 (S.D.N.Y.1978); Ledee v. Ceramiche Ragno, 528 F.Supp. 243 (D.P.R.1981), aff'd, 684 F.2d 184 (1st Cir.1982). Accordingly, defendants' motion to dismiss will be granted.